## 9613

### STATE v. WINFIELD.

#### (91 S. E. 327.)

CRIMINAL LAW—HEARSAY EVIDENCE.—In murder trial, it was error to admit testimony that the witness, awakened by the shooting, heard men going by in the dark, and a question, "Did you get him," replied to with the words "Yes, but God damn it, I got him in the back," and that one of the men said, "What are you going so fast for?" where the witness did not identify any of the voices; the testimony being plain hearsay.

Before RICE, J., Aiken, June, 1916. Reversed.

Seth Winfield was convicted of manslaughter, and appeals.

Defendant's exceptions were as follows:

(1) The presiding Judge erred in modifying defendant's fifth request to charge by instructing the jury that if defendant was shooting at Norman Wilson in self-defense and killed Rich Johnson, he would not be guilty. Whereas, the said request to charge contained the totally different proposition of law that, if the deceased, Rich Johnson, was aiding Norman Wilson as an accessory to take the life of defendant, he would have the same right to kill the accessory in self-defense as he had to kill the principal in self-defense— the error being that said modification totally destroyed the effect of said request, which contained a sound proposition of law which defendant was entitled to have charged to the jury, and was virtually a refusal of said request, which was highly prejudicial to the defendant's rights.

(2) The presiding Judge erred in allowing the witness, Grant Sapp, to testify, over defendant's objection, that while he was at Fanny Dobey's house, about one-half mile from the scene of the homicide, and about 10 minutes after the shooting, three or four persons passed by the house, and he heard one of them say: "Did you get him?" and the other man answered, "Yes, but God damn it, I got him in the back." Also, "They said what are you going so fast about; no use to be going so fast"—the error being that said testimony was not a part of the *res gestae,* nor was it shown to be a statement or declaration made by either of the defendants, but was rankest hearsay, not binding on the defendants, clearly incompetent, and extremely harmful and prejudicial to the rights of the defendant.

*Mr. J. B. Salley,* for appellant, cites: 68 S. C. 309, 311; 1 Chamberlayne, Modern Law Evidence, sec. 1295; 109 S. W. 393; 106 S. W. 1191.

*Mr. Solicitor Gunter,* for respondent, cites: *As to self-defense:* 33 S. C. 582; 40 S. C. 331; 71 S. C. 136; Clark's Criminal Law 149. *Res gestae:* 68 S. C. 276, 304; 35 S. C. 537; 60 S. C. 67; 72 S. C. 350; 85 S. C. 273.

February 10, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The defendant was convicted of manslaughter, and the judgment was seven years imprisonment at hard labor. He has appealed.

There are two exceptions, but the appellant stated at the hearing that his chief reliance was upon the second exception, and we shall consider that one alone. Let the exceptions be reported.

The homicide was done at a "hot supper" on a Saturday night, some two hours after midnight, and out of doors in the edge of a wood, where several men were playing at cards by a lightwood knot fire. "A drove" of negroes were present thereabout, and "shooting took place all around." The deceased, Rich Johnson, had a pistol, as had others. The defendant also had a pistol, and by his own account he shot several times at one Norman Wilson, in defense of himself. No witness testified he saw the defendant shoot Johnson; and the dead body was not discovered until the following morning, when it was found in an adjoining field some 70 yards from the lightwood knot fire. So far as the testimony shows, whoever killed Johnson did not know he had done the act until the next morning after the event. After the general shooting the crowd dispersed, running in many directions.

The State offered a witness named Sapp, who testified he was not at the frolic; that he was in a house a mile or a half a mile distant from the place of the frolic; that he heard the shooting; that the shooting awakened him, and he stood in the window of the house; that some minutes after the shooting, he could not say how long, he "heard some fellow say to another one, 'Did you get him?' and another one said, 'Yes, but God damn it, I got him in the back;' " that the witness saw three or four men going west; that one of the men said, "What are you going so fast for?" that the witness could not say how far the men were from his house when they spoke the quoted words; the witness further said he did not know what person spoke the words. This testimony of Sapp's was objected to by the defendant. The Court ruled:

"I do not think it would be a part of the *res gestae,* but I think it would be for the jury to say whether one of these men made those remarks. If they believe that a remark was made, I think it would be for the jury to say whether or not they made it."

Plainly the Court was right to exclude the testimony as part of the things done at the transaction, the *res gestae*. But the testimony was not competent in any view.

The defendant had testified he shot in self-defense. The testimony of Sapp made him say he shot Johnson in the back. The person who made the declaration was not identified, save by the pronoun "I." The declarant testified he did not know who "I" was. An unidentified voice, out of the darkness of the night, said in effect that the defendant did the act. That was plain hearsay, it was incompetent, it amounted to an unproven confession by the defendant, and it was hurtful to his cause. See *Hambright* v. *Railroad*, 102 S. C. 169, 86 S. E. 375.

The judgment is reversed, and a new trial ordered.

MESSRS. JUSTICES HYDRICK, WATTS and FRASER concur in the opinion of the Court.

MR. CHIEF JUSTICE GARY dissents.